IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CYNTHIA G. GIBBONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL NO. 04-4047-JLF |
| ) | |
| BANTERRA BANK CORPORATION ) | |
| a/k/a BANTERRA BANK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**FOREMAN, District Judge:**

Before the Court is defendant's motion for summary judgment (Doc. 34). Plaintiff has filed a response, (Docs. 43,44), and defendant has filed a reply (Doc. 45).

## I.   Background.

The following facts are undisputed. On May 29, 1978, plaintiff, a high school graduate with no banking experience, was hired as a bank teller by the Bank of Egypt in Marion, Illinois. In 1985, Egypt Bancorp, Inc. acquired the Bank of Egypt. Also about this time, plaintiff was promoted to loan secretary in the loan department. In 1989, Banterra Corp. acquired Egypt Bancorp.

Plaintiff's loan department supervisor was Jon Patton, and he remained her supervisor for the next fifteen (15) years. After starting as a loan secretary, plaintiff began assuming additional lending responsibilities, and eventually, she began doing her own loans and in 1993, she received her own lending authority.

In 1998, Banterra Bank of Marion merged with four other independent banks which collectively became "Banterra Bank." As a result of the merger, Banterra Bank experienced

numerous organizational changes. For example, in November 1999, the lending group was divided into two divisions: Retail Banking and Commercial Banking. Plaintiff was assigned to the Commercial Banking Division, and was later designated as a Commercial Officer I. Another organizational change was the establishment of a company-wide pay grade system, which followed the recommendations of Professional Banking Services. The first formal pay grade system was introduced to employees in 2000.

From 1995 through 2000, plaintiff's salary increased from $20,000 to $45,000, which is an increase of 125% in five years. From 1993 through 2000, plaintiff received the following bonuses:

| Year | Bonus |
|------|-------|
| 1993 | $2,000 |
| 1994 | $3,000 |
| 1995 | $4,000 |
| 1996 | $4,000 |
| 1997 | $4,000 |
| 1998 | $1,701 |
| 1999 | $1,125 |
| 2000 | $1,375 |

*(Doc. 35, Exh. I).*

In February, 2001, Mr. Patton was transferred out of lending, and as a result, his loan portfolio was distributed among other employees. Plaintiff received over five million dollars, ($5,000,000), of loans from his portfolio, and some of the other loans were assigned to employee Steve Lappin.

On August 24, 2001, plaintiff delivered a resignation letter. This letter read:

> Please accept my resignation effective August 31, 2001. I will work until September 7th if you feel it to be necessary. It has

been a pleasure working with Banterra.

*(Doc 35, Exh. M).*

Plaintiff's last day of work was August 24, 2001.

Approximately three weeks after her resignation, plaintiff asked defendant for her job back. (Doc. 35, Exh. A, pp.113-117). According to defendant, it did not rehire plaintiff because the bank was reducing its workforce and determined that plaintiff's lending portfolio would be naturally reduced through attrition. (Doc. 34, Exh, C, p.5).

Plaintiff has sued defendant under Title VII for unequal pay, unequal job duties, and for failure to promote. Plaintiff also claims that defendant subjected her to a hostile work environment based on gender which led to her constructive discharge. Defendant's motion for summary judgment is discussed below.

## II. **Summary Judgment Standard.**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *FED.R.CIV.P. 56.* The initial burden of showing that no genuine issue of material fact exists is on the moving party. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1996). Once the moving party has demonstrated the absence of any genuine factual issues, the nonmoving party, to withstand summary judgment, must present specific facts showing that a genuine issue exists for trial. *FED.R.CIV.P. 56(e)*. A genuine issue of material facts exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 249 (1986).

**III.    Discussion.**

Defendant has moved for summary judgment on the ground that plaintiff does not have either direct evidence or indirect evidence of discrimination.

A Title VIII plaintiff may prove employment discrimination by using either the "direct method" or the "indirect method." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-28 (7th Cir.1998). Under the direct method, a plaintiff may show, by way of either direct or circumstantial evidence, that the employer's decision to take an adverse job action against her was motivated by an impermissible purpose, in this case, gender discrimination. *Id.* at 727. The United States Court of Appeals for the Seventh Circuit has defined "direct evidence" as "evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir.2003); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir.1997). In other words,"[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rogers*, 320 F.3d at 753 (*citation omitted*). A plaintiff can also prevail under the direct method by building a "convincing mosaic" of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. *See Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994). One type of this circumstantial evidence of intentional discrimination consists of "ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Troupe*, 20 F.3d at

737. Such circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir.2003).

As noted, plaintiff alleges that defendant discriminated against her based on gender by giving her unequal pay, unequal job duties, and by failing to promote her. Specifically, plaintiff claims that she was being paid less than other individuals who were in an inferior lending capacity. She also claims that she was given unequal job duties, such as filling in at the reception area, answering phones, taking messages, directing questions and complaints, and training a junior lender. Plaintiff also alleges that for awhile during 1987, she performed what were technically officer duties, but she had not yet been promoted to officer rank. Finally, plaintiff claims that she was not given a secretary, she received an unfair allocation of Mr. Patton's loan portfolio, and she was excluded from meetings where educational opportunities were discussed.

Plaintiff claims that she has direct evidence of discrimination of salary discrimination and cites to Banterra Discovery document numbers 1610-1634, 1754-1782, and 1825-1826. (Doc. 44, p.6). These documents, however, are not part of the Court record as plaintiff has failed to attach these documents to her pleadings. The Court does note, however, that at her deposition, plaintiff identified six males whom she claims received more favorable salaries, job duties, and other favorable treatment. As discussed below, however, plaintiff was not similarly situated to these males because all of them had attended college and/or had prior banking experience when defendant hired them.

Plaintiff also attempts to offer as direct evidence a statement from her supervisor, Jon Patton. Specifically, at her deposition, plaintiff testified that she asked Mr. Patton, "Why did other male employees (referring to Jim Stroud) make more money than I?" (Doc. 35, Exh. B, p.189, lns. 8-11). She further testified that Patton's response was that the men "had families and that her husband made a good living and that she did not need to worry about it." (Doc. 35, Exh. B, p.189, lns. 12-17).

Initially, the Court notes that this statement is not the equivalent of a declaration that women should not be paid as much as men. Furthermore, for an isolated comment such as this to rise to the level of direct evidence, it must be "contemporaneous with" or "causally related" to the employer's decision-making process. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 723 (7th Cir.1998) (*internal citations omitted*); see also *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 569 (7th Cir.1989) (inappropriate but isolated stray remarks by managers that were discriminatory did not constitute direct evidence of discrimination because they were "completely unrelated to the employment decision challenged by the [plaintiffs]"). Here, plaintiff has offered no evidence whatsoever that Patton's remark had anything to do with the amount of her compensation. Furthermore, it not clear from the record whether Patton had any input or had any decision-making authority as to the amount of her salary. Interestingly, plaintiff herself repeatedly testified at her deposition that Patton may have been joking. (Doc. 35, Exh. A, p. 188). Specifically, she said,"and if he meant it as a joke or for real, I don't know," (Doc. 35, Exh. B., p.188); "But it may have just been a joke," (Doc. 35, Exh. A, p. 189); and "So, again, it possibly was a

joke, but we had lots of conversations" (Doc. 35, Exh. A, p. 189).  Finally, according to plaintiff's testimony, the statement was made sometime in 1996, over five years before she resigned.  (Doc. 35, Exh. A, pp.189-190; Exhs. C, pp.6-7).  In sum, the record contains no evidence whatsoever that Patton's statement was in any way related to the Bank's determination of how much plaintiff was paid.  Accordingly, the Court cannot find that Patton's isolated remark, made five years before plaintiff resigned, is direct evidence of discriminatory animus based on gender.

Citing Jay Sala's deposition, plaintiff also claims that Mr. Sala testified that he had specifically heard "key members of the bank say that they could pay women less than men and hire women because they can pay them less." (Doc. 44, pp.4-5).  Initially, however, the Court notes that plaintiff has mischaracterized Mr. Sala's testimony.  Rather than identifying "key members" of the bank that made this comment, Mr. Sala testified that the comments were made "in general" and that it could have been somebody "not even affiliated with the bank."  Moreover, the United States Supreme Court has said that direct evidence excludes "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself." *E.E.O.C. v. Liberal R-II School Dist.,* 314 F.3d 920, 923 (8th Cir. 2002) (*citing Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775;  *see also Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1403 (7th Cir.1996) ("before seemingly stray workplace remarks will qualify as direct evidence of discrimination, the plaintiff must show that the remarks 'were related to the employment decision in question.'").  Here, plaintiff has failed to show that Sala's statement was in any way related

to the decision-making process regarding her compensation. In fact, Sala's testimony was to the contrary. He specifically stated that the comment was "not [a] discussion of strategy, [it was] just an overall observation. And it wasn't even Banterra, necessarily, [it was] in general." (Doc. 45, Exh. X1, pp.32-33). It may well be that in the banking industry, women tend to receive less compensation than men. Without evidence that Sala's observation was tied to a determination of this particular plaintiff's salary, however, the Court cannot find that his remark constitutes direct evidence of discrimination.

The next question is whether plaintiff can proceed under the direct method by building a convincing mosaic of circumstantial evidence that would allow a jury to infer "intentional discrimination by the decisionmaker." *Rogers*, 320 F.3d at 753. As noted, this evidence can consist of "ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff." *Troupe*, 20 F.3d at 737. As noted, however, this circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Adams,* 324 F.3d 935, 939 (7th Cir.2003).

Here, plaintiff offers the two remarks discussed above. There is no evidence, however, to indicate that either remark had any bearing whatsoever on defendant's determination of plaintiff's salary level. Furthermore, one of the remarks, (Mr. Sala's), was not a remark that was limited to defendant, rather, it appears to be a commentary about the banking industry in general. Without evidence that either of these remarks had some connection to determining plaintiff's salary, the Court cannot find that this evidence points

"directly to a discriminatory reason for the employer's action." *Adams*, 324 F.3d at 939. For these reasons, plaintiff cannot prevail under the direct method.

If a plaintiff cannot prevail with the direct method, she must proceed under the indirect method, (i.e., the familiar *McDonnell Douglas* framework). *Adams*, 324 F.3d at 939-40. To show a *prima facie* case of discrimination using the indirect method, plaintiff must show that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably. *McDonnell Douglas Corp v. Green,* 411 U.S. 792, 802 (1973). For the reasons set forth below, plaintiff has not met the fourth requirement of showing that similarly situated males were treated more favorably.

As noted, plaintiff at her deposition identified six males whom she claims received more favorable salaries, job duties, and other favorable treatment: Steve Lappin, David Hesterberg, Brad Ragain, Jay Sala, Ken Crews, and Jim Stroud. (Doc. 34, Exh. A, pp.46,51,58,62,67,78). To constitute evidence of discrimination, however, these individuals must be similarly situated to plaintiff in terms of education, experience, and qualifications. *Stahl v. St. Anthony Medical Center of Crown Point, Inc.*, 103 Fed.Appx. 13 (7th Cir. 2004) (*citing Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002) (To meet the burden of identifying a "similarly situated" employee, a plaintiff must show that someone outside the protected class is "directly comparable to her in all material respects," including experience, education, and qualifications).

Here, plaintiff began her banking career with a high school diploma and no banking experience. There is no evidence in the record that plaintiff attended college or obtained a college degree. In contrast, Steve Lappin was hired with a bachelor of science degree in business administration and had previous management experience at two other banks. (Doc. 35, Exh. T, pp.7-13). David Hesterberg had a bachelor of science degree in finance and had more than 10 years of banking experience. (Doc. 35, Exhs. C,V). Similarly, Brad Ragain had a bachelor of science degree in business administration as well as branch management experience from three other banks. (Doc. 35, Exhs. C,W). Jay Sala also had a college degree and had secondary market lending experience. (Doc. 35, Exhs, C, X, pp.43-46). Ken Crews, the director of marketing and business development, (not a lender), also had a college degree and 14 years of banking experience. (Doc. 35, Exhs. C,Y). Finally, Jim Stroud, had attended Southern Illinois University and had an associate's degree from John A. Logan College. (Doc. 35, Exh. S; Doc.34, Exh. A, p.64). In addition, Stroud transferred to a Carbondale bank in 1996, over five (5) years before plaintiff resigned. Because these individuals are not comparable to plaintiff in terms of experience, education and qualifications, these individuals are not similarly situated to plaintiff. In sum, plaintiff has offered no evidence to show that she was treated differently from similarly-situated males. Accordingly, plaintiff cannot show a *prima facie* case of gender discrimination.

Lastly, plaintiff claims that defendant subjected her to a hostile work environment based on gender which led to her constructive discharge. When asked at her deposition why she thought the work environment was hostile, she replied:

>> Hostile I guess identifying as in turmoil, more business, more business than, you know, than staff could handle.

*(Doc.34, Exh. A, p.99).*

In other words, plaintiff's hostile work environment claim is based on the fact that her department was "very busy." (Doc.34, Exh. A, p.100).

To state claim of hostile work environment under Title VII, plaintiff must allege harassment that is sufficiently "severe or pervasive to alter the terms or conditions of employment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). In other words, a hostile or abusive environment consists of "discriminatory intimidation, ridicule and insult" in the workplace. *Dey v. Colt Constr. and Dev. Co.*, 28 F.3d 1446, 1453 (7th Cir.1994) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Courts consider the frequency of the conduct, its severity, and whether it reasonably interferes with the employee's work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993); *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir.1993). Relatively isolated incidents of trivial misconduct do not support a hostile environment claim. *See Saxton v. American Telephone and Telegraph Co.*, 10 F.3d 526, 533 (7th Cir.1993). With regard to plaintiff's constructive discharge claim, plaintiff needs to show that her [discriminatory] working conditions were "so intolerable that a reasonable person would have been compelled to resign." *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir.1996).

Here, plaintiff's allegations do not rise to the level of a hostile work environment or an environment that would support a constructive discharge claim. Furthermore, plaintiff

stated in her resignation letter that she would work additional days if necessary. Indeed, she wrote that: "It has been a pleasure working with Banterra." Finally, three weeks after she quit, plaintiff asked for her job back. Under these circumstances, the Court grants summary judgment on plaintiff's hostile work environment and constructive discharge claims.

For all of the above reasons, defendant's motion for summary judgment is granted.

## IV. **Summary.**

Based upon the above, defendant's motion for summary judgment (Doc. 34) is **GRANTED**. Judgment shall be entered against plaintiff and in favor of the defendant. A separate Judgment shall accompany this Order.

**IT IS SO ORDERED.**
**DATED: December 19, 2005.**

*s/ James L. Foreman*
**DISTRICT JUDGE**